AARON M. CLEFTON, Esq.  (SBN 318680)
CLEFTON DISABILITY LAW
2601 Blanding Ave, Suite C #336
Alameda, CA 94501
Telephone:  510/832-5001
info@cleftonlaw.com

Attorneys for Plaintiff
ROBERTA MARTINEZ

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTA MARTINEZ<br><br>        Plaintiff,<br><br>    v.<br><br>DUC THAI dba ABC LAUNDROMAT 4,<br><br>    Defendant. | **CASE NO. 8:25-cv-1036**<br>**Civil Rights**<br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES REGARDING DENIAL OF SERVICE DOG AND HANDLER TO EQUALLY USE AND ENJOY PUBLIC ACCOMMODATION:**<br><br>**1.  Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)**<br><br>**2.  Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)**<br><br>**3.  Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)**<br><br>**DEMAND FOR JURY TRIAL** |

1.    **PREFETORY STATEMENT:** This is Plaintiff's third Americans with Disabilities Act ("ADA") lawsuit in her lifetime. It does not involve any architectural barriers, only service dog denial claims. Plaintiff is not a high frequency litigant. Plaintiff's law firm is not a high frequency litigation firm. It does not represent high frequency litigants as defined by state law. Plaintiff

1

ROBERTA MARTINEZ complains of Defendant DUC THAI dba ABC
LAUNDROMAT 4, and alleges as follows:

2.    **INTRODUCTION:**   Defendant forced Plaintiff to leave the ABC
Laundromat 4 (the "Laundromat") located at 110-112 S. Western Ave, Anaheim,
California, due to the presence of her service dog, Dakota. Plaintiff uses a service
dog that is trained to alert her about her blood sugar levels being too low or too
high. Dakota is necessary for maintaining Plaintiff's good health.  He is also trained
to alert others if Plaintiff passes out or faints. At the time of the incident, Dakota
was wearing a vest indicating that he is a service dog. However, Defendant did not
ask nor allow Plaintiff to explain the tasks that Dakota performs for her.  Instead,
Defendant told Plaintiff that she could not bring her dog into the laundromat
regardless of whether it was a service dog.

3.    Plaintiff had to leave, embarrassed and upset, because Defendant
refused to allow Dakota to stay with Plaintiff inside the laundromat.  As a result of
Defendant's failure to implement a proper service dog policy and lack of employee
training, Plaintiff was denied equal access to ABC Laundromat 4.  Plaintiff was
also subject to the humiliation and difficulty of being forced to leave the
laundromat before being allowed to help her sister, who was recovering from recent
back surgery, with her laundry.

4.    Defendant's decision to bar Plaintiff from entry because of her service
dog contravenes the ADA's mandate to allow disabled persons equal enjoyment of
the facility and the Department of Justice's technical assistance and guidance on the
subject of "Service Animals."  In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service
  animal from the premises unless: (1) the dog is out of control and the
  handler does not take effective action to control it or (2) the dog is not
  housebroken. When there is a legitimate reason to ask that a service
  animal be removed, staff must offer the person with the disability the

2

opportunity to obtain goods or services without the animal's presence. DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/ (emphasis added).

5.      As a result of Defendant's illegal acts, Plaintiff suffered denial of her civil rights and suffered physical, mental and emotional damages.  Plaintiff would like to return to use the laundry services of the Laundromat, but she fears returning with her service dog until the policies of the Laundromat are made accessible to disabled individuals who use service dogs, including revision of its service dog policies and necessary employee training. She has brought this lawsuit to force Defendant to change its discriminatory and illegal policies, and to compensate her for refusing to allow her to do laundry inside the Laundromat  while she was accompanied by her service dog because she is a physically disabled person who needs the assistance of her qualified service dog.  Plaintiff seeks an injunction to protect the rights of all disabled persons, including Plaintiff, when accompanied by a qualified service dog at the Laundromat.

6.      **JURISDICTION:**  This Court has jurisdiction of this action pursuant to 28 USC sections 1331 and 1343.  This Court has jurisdiction over the claims brought under California law pursuant to 28 U.S.C. § 1367.

7.      **VENUE:**  Venue is proper in this court pursuant to 28 USC section 1391(b) and is proper because the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

8.      **INTRADISTRICT:**  This case should be assigned to Southern Division as the real property which is the subject of this action is located in this intradistrict and Plaintiff's causes of action arose in this intradistrict.

9.      **PARTIES:**  Plaintiff Roberta Martinez is a "qualified" physically disabled person.  She suffers from diabetes, emphysema, anxiety and post-traumatic

stress disorder.  Plaintiff relies upon and has trained her service dog, a Golden Retriever named "Dakota," to assist her with certain tasks, including 1) alerting Plaintiff to changes in her blood sugar levels, 2) alerting others if Plaintiff collapses due to a medical emergency, and 3) making contact with Plaintiff by leaning against her when her anxiety level increases.  Dakota has been professionally trained as a service dog, and Plaintiff reinforces that training daily.  Dakota wears a vest and tag that clearly identifies him as a service dog.  Plaintiff is a qualified person with a disability as defined under federal and state law.  42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(1).

10.    Defendant DUC THAI dba ABC LAUNDROMAT 4, is and was at all times relevant to this Complaint the owner, operator, lessor and/or lessee of the Laundromat where Plaintiff was denied access with her service dog.

11.    The Laundromat is a place of "public accommodation" and a "business establishment" subject to the requirements *inter alia* of multiple categories of 42 U.S.C. section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code sections 54 *et seq*.

12.    **FACTUAL STATEMENT:**  Plaintiff is a person with multiple disabilities who would like to return to the Laundromat in Anaheim, California, to do her laundry and to assist her sister in doing her laundry.

13.    Plaintiff has been working with her service dog Dakota since he was three months old.  Dakota is a Golden Retriever who was professionally trained to be a service dog.  Additionally, Plaintiff has also trained and continues to train Dakota to serve her specific needs throughout their relationship.  Dakota is specifically trained to assist Plaintiff with numerous tasks including alerting her when her blood sugar levels are either too high or too low, and helping her control her symptoms of anxiety by grounding Plaintiff when she exhibits those symptoms by pressing on Plaintiff's body with her own.

4

14.    Dakota is a working dog; he is not a pet.  Plaintiff and Dakota have trained extensively together, and they supplement that training daily.  Plaintiff takes Dakota everywhere with her in public.  It is important they stay together at all times because (a) Dakota provides important services for Plaintiff; and (b) it is part of the training and bonding requirement that they be together constantly to maintain their bond.  Where Plaintiff goes, Dakota goes.  Below is a photograph of Dakota as he looked when he and Plaintiff were denied access at the Laundromat:



15.     It is self-evident to any reasonable person that Dakota is a service dog and should be allowed to accompany Plaintiff wherever she goes.  This is also indicated by bright white letters against a black background that read, "SERVICE DOG," across his harness.

16.    On or about March 13, 2025, Plaintiff went to the Laundromat owned and operated by Defendant with the intention of assisting her sister Phyllis with doing her laundry.  Phyllis had recently undergone back surgery, and she had trouble lifting her laundry basket and bending down to place clothing in washing machines and dryers.

17.    Plaintiff picked up her sister and the two drove together to the Laundromat to get the laundry chore done and spend some time together.  The drive

5

1  was short as the Laundromat is conveniently located about 1.5 miles from

2  Plaintiff's home. As is her standard practice when she travels in public, Plaintiff

3  brought her service dog, Dakota.

4      18.    Plaintiff and Phyllis arrived at the Laundromat and parked. Plaintiff

5  took the laundry from the car, entered the Laundromat, and went to the nearby

6  washing machines to begin loading the laundry into the machine. Dakota was by

7  Plaintiff's side and her sister was nearby as well. Plaintiff saw one of Defendant's

8  employees at the back of the Laundromat when she entered.

9      19.    Plaintiff went to get quarters from a nearby machine, and as she did,

10 Defendant's employee walked quickly toward her.  He stood a few feet away from

11 Plaintiff and said, "you cannot have a dog inside."

12     20.    Plaintiff responded by explaining that, "this is a service dog.  He is

13 federally protected." In response Defendant's employee simply repeated "you can't

14 have a dog in here."  Plaintiff's sister then joined the conversation to assist Plaintiff.

15 She told Defendant's employee, "he's a service dog."  Defendant's employee did

16 not respond to Plaintiff's sister. Plaintiff then also repeated that Dakota is a service

17 dog and allowed to accompany her anywhere the general public was allowed, and

18 that included the Laundromat.  In response, Defendant's employee told Plaintiff she

19 had to take Dakota outside.

20     21.    Plaintiff refused. She again asserted Dakota is a service dog and has a

21 right to accompany her in the Laundromat.  At no time did the employee ask

22 whether Dakota was trained to assist with Plaintiff's disabilities, or what tasks he

23 was trained to do for Plaintiff.

24     22.    At this point Defendant's employee called either the owner or a

25 manager of the Laundromat who identified himself as "Alex."  The employee gave

26 his phone to Plaintiff so he could speak directly with Alex. Alex repeated the

27 employee's description of the Laundromat's service dog policy, that no dogs, even

28 service dogs, were not allowed inside the Laundromat.  Alex told Plaintiff she

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

could not have her dog in the Laundromat and had to take it outside.  At no time did Alex ask Plaintiff whether Dakota was trained to assist her with tasks related to her disability or what tasks he was trained to do.  Upset and finding no resolution, Plaintiff left and sat in her car.  She called the police.

23.    Plaintiff waited in her car for over 2 hours while her sister continued to do her laundry.  When the police arrived, she told them what happened.  However, the police viewed the matter as a civil issue. They told Plaintiff that they could not force the owner to allow her back inside the Laundromat. Plaintiff waited until her sister finished her laundry. Then she drove her sister home and returned home herself, upset and embarrassed.  Plaintiff felt particularly humiliated and distressed by the fact that she was unable to help her sister with her laundry when her sister had specifically asked for her assistance with it so that she could avoid lifting and bending after recent back surgery.

24.    This incident was traumatic for Plaintiff who was demeaned, intimidated, and harassed for asserting her rights under the ADA and state law. Defendant's staff prevented her from having service animal accompany her while helping her sister do her laundry at the Laundromat which resulted in Plaintiff having to choose between the danger of being without her medically necessary service dog and helping her sister.

25.    As a result of this incident, Plaintiff has been scared to go out in public with Dakota. Staying inside her apartment and not going out is unhealthy for both her and Dakota.  Both are suffering from ill health from being isolated and sedentary.

26.    Plaintiff would like to return to the Laundromat.  However, Plaintiff can only feel comfortable returning to shop there *after* Defendant has implemented proper service animal policies and training of its staff.

//

//

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**(USC §§ 12101 *et seq.*)**

27.     Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in Paragraphs 1 through 26, above, and incorporates them herein by reference as if separately repled hereafter.

28.     In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous."  42 U.S.C. § 12101(a).

29.     The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 USC § 12182.

30.     Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

31.     ABC Laundromat 4 is a public accommodation within the meaning of Title III of the ADA.  42 U.S.C. § 12181(7)(F).

32.     The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such

8

modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii).

33.    Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go."  ADA 2010 Revised Requirements, www.ada.gov/service -animals-2010.htm  Further,

> **Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**

*Ibid.*, emphasis in original.

34.    Defendant has a policy and practice of denying and restricting access to patrons with service animals at the Laundromat. This is contrary to the ADA. The Department of Justice issued guidance on the subject of "Service Animals."  In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence**.**

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/ (emphasis added).

35.    On information and belief, as of the date of Plaintiff's most recent visit to the Laundromat on or about March 15, 2025, Defendant continues to deny full

and equal access to Plaintiff and to discriminate against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of the ADA.

36.   In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Congress stated as its purpose:

> It is the purpose of this Act
>
> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and
>
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

37.   As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et seq.*). The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes but is not limited to any "sales or rental establishment." 42 USC § 12181(7)(E).

38.   The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182. The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory

to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

The acts and omissions of Defendant set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

39.   The removal of each of the policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA.  As noted hereinabove, removal of each and every one of the policy barriers complained of herein were already required under California law.  In the event that removal of any

barrier is found to be "not readily achievable," Defendant still violated the ADA, per section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

40.    On information and belief, as of the dates of Plaintiff's encounters at the premises and as of the filing of this Complaint, Defendant's actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other disabled persons who work with service dogs, which violates Plaintiff's right to full and equal access and which discriminates against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

41.    Defendant's actions continue to deny Plaintiff's rights to full and equal access by deterring Plaintiff from patronizing the Laundromat and discriminated and continue to discriminate against her on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

42.    Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of her disabilities in violation of sections 12182 and 12183 of this title.  On information and belief, Defendant has continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full and equal" access to this public accommodation since on or before Plaintiff's encounters.  Pursuant to section 12188(a)(2).

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities

to the extent required by this title. Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

43.     Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990. Plaintiff is a qualified disabled person for purposes of section 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing she will be subjected to such discrimination each time that she may use the property and premises, or attempt to patronize the Laundromat, in light of Defendant's policy barriers.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

## SECOND CAUSE OF ACTION:
## DAMAGES AND INJUNCTIVE RELIEF
## FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES
## IN A PUBLIC ACCOMMODATION
### (Civil Code §§ 54 *et seq.*)

44.     Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 43 of this Complaint and all paragraphs of the third cause of action, as plead infra, incorporates them herein as if separately re-pleaded.

45.     Under the California Disabled Persons Act (CDPA), people with disabilities are entitled to the "full and free use of . . . public buildings, . . . public facilities, and other public places." Civil Code § 54(a).

46.     Civil Code section 54.1(a)(1) further guarantees the right of "full and equal access" by persons with disabilities to "accommodations, advantages, facilities . . . hotels, lodging places of accommodation, amusement or resort, or other places to which the general public is invited." Civil Code § 54.1(c) also specifies that, "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of training

13

them as guide dogs, signal dogs, or service dogs in any of the places specified in
subdivisions (a) and (b)."

47.    Civil Code section 54.2(a) specifically protects the right of "every
individual with a disability" "to be accompanied by a guide dog, signal dog, or
service dog, especially trained for the purpose, in any of the places specified in
Section 54.1."

48.    Civil Code section 54.3(b) makes liable "Any person or persons, firm
or corporation who denies or interferes with admittance to or enjoyment of the
public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the
rights of an individual with a disability under Sections 54, 54.1 and 54.2."  This
section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but
is not limited to, preventing or causing the prevention of a guide dog, signal dog, or
service dog from carrying out its functions in assisting a disabled person."

49.    Defendant is also in violation of California Penal Code section
365.5(b) which states:

> No blind person, deaf person, or disabled person and his or her specially
> trained guide dog, signal dog, or service dog shall be denied admittance
> to accommodations, advantages, facilities, medical facilities, including
> hospitals, clinics, and physicians' offices, telephone facilities, adoption
> agencies, private schools, hotels, lodging places, places of public
> accommodation, amusement or resort, and other places to which the
> general public is invited within this state because of that guide dog,
> signal dog, or service dog.

50.    ABC Laundromat 4 is a public accommodation within the meaning of
the CDPA.  On information and belief, Defendant is the owner, operator, lessor or
lessee of the public accommodation.

51.    Defendant made the decision to knowingly and willfully exclude
Plaintiff and her service dog from its public accommodation and thereby deny
Plaintiff her right of entrance into its place of business with her service dog.  As a
result of that decision Plaintiff has faced the continuing discrimination of being
barred from entering this public accommodation and place of business based upon

1   Defendant's illegal prohibition of her legally protected use of her service dog.

2   Plaintiff has continued to suffer denial of access to these facilities, and faces the

3   prospect of unpleasant and discriminatory treatment should she attempt to return to

4   these facilities.  Plaintiff is unable to return to the Laundromat until she receives the

5   protection of this Court's injunctive relief, and she has continued to suffer

6   discrimination on a daily basis since on or about March 15, 2025, all to her

7   statutory damages pursuant to California Civil Code §§ 54.1, 54.2, and 54.3 and

8   California Penal Code section 365.5.

9        52.    **INJUNCTIVE RELIEF:**  Plaintiff seeks injunctive relief to prohibit

10   the acts and omissions of Defendant as complained of herein which are continuing

11   on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff

12   and other members of the public who are disabled, including disabled individuals

13   who require the assistance of service animals, from full and equal access to these

14   public facilities.  Such acts and omissions are the cause of humiliation and mental

15   and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as

16   an inferior and second-class citizen and serve to discriminate against her on the sole

17   basis that she is a person with disabilities who requires the assistance of a service

18   animal.

19        53.    Plaintiff wishes to return to the Laundromat but is deterred from

20   returning to use these facilities, because the lack of access and the significant policy

21   barriers will foreseeably cause her further difficulty, discomfort and

22   embarrassment, and Plaintiff is unable, so long as such acts and omissions of

23   Defendant continue, to achieve equal access to and use of these public facilities.

24   Therefore, Plaintiff cannot return to the Laundromat and its facilities and is deterred

25   from further patronage until these facilities are made properly accessible for

26   disabled persons, including Plaintiff and other disabled persons and disabled

27   individuals who require the assistance of a service animal.

28        54.    The acts of Defendant have proximately caused and will continue to

cause irreparable injury to Plaintiff if not enjoined by this Court.  Plaintiff seeks injunctive relief as to Defendant's inaccessible policies.   As to the Defendant that currently own, operate, and/or lease (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

55.     Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendant to grant full and equal access to Plaintiff in the ways complained of and to require Defendant to comply forthwith with the applicable statutory requirements relating to access for disabled persons. Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and 55, and other laws.  Plaintiff further requests that the Court award damages pursuant to Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs pursuant to Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as hereinafter prayed for.

56.     **DAMAGES:**  As a result of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendant in owning, operating, leasing, constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of her civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to her damages per Civil Code section 54.3, including general and statutory damages, and treble damages, as hereinafter stated.  Defendant's actions and omissions to act constitute discrimination against Plaintiff on the basis that she was and is physically disabled and unable, because of the policy barriers created and/or maintained by the Defendant in violation of the subject laws, to use the public facilities on a full and equal basis as other persons.  The violations have deterred Plaintiff from returning to attempt to patronize the Laundromat and will

16

continue to cause her damages each day these barriers to access and policy barriers continue to be present.

57.    Further, although it is not necessary for Plaintiff to prove wrongful intent in order to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168, 177 (1990)), Defendant's behavior was intentional. Defendant was aware and/or were made aware of its duties to refrain from establishing discriminatory policies against disabled persons, prior to the filing of this complaint.  Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and its implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for her rights and safety.

58.    **FEES AND COSTS:**  As a result of Defendant's acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs, pursuant to the provisions of Civil Code sections 54.3 and 55.  Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

**THIRD CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED BY CIVIL CODE SECTION 51(f)**

59.    Plaintiff re-pleads and incorporates by reference, as if fully set forth

again herein, the allegations contained in Paragraphs 1 through 58 of this Complaint and incorporates them herein as if separately re-pleaded.

60.     At all times relevant to this action, the Unruh Civil Rights Act, California Civil Code § 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

61.     California Civil Code section 52 provides that the discrimination by Defendant against Plaintiff on the basis of her disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

62.     The Laundromat is a business establishment within the meaning of the Unruh Act.  Defendant is the owner and operator of the business establishment.

63.     Each of Defendant's discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

64.     Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code section 52.  Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

65.     The actions and omissions of Defendant as herein alleged constitute a denial of access to and use of the described public facilities by disabled persons

18

who use service dogs within the meaning of California Civil Code sections 51 and 52. As a proximate result of Defendant's action and omissions, Defendant has discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and are responsible for statutory, compensatory and treble damages to Plaintiff, according to proof.

66. Defendant's behavior was intentional: Defendant was aware and/or was made aware of its duties to refrain from establishing discriminatory policies against physically disabled persons, prior to the filing of this Complaint. Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and their implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for her rights and safety.

67. **FEES AND COSTS:** As a result of Defendant's acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute in order to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons. Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the provisions of California Civil Code sections 51 and 52. Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

68. Plaintiff suffered damages as above-described as a result of Defendant's violations.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

//

//

# **PRAYER**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint.  Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendant as alleged herein, unless Plaintiff is granted the relief she requests.  Plaintiff and Defendant have an actual controversy and opposing legal positions as to Defendant's violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff Roberta Martinez prays for judgment and the following specific relief against Defendant:

1. An order enjoining Defendant, its agents, officials, employees, and all persons acting in concert with them:

   a. From continuing the unlawful acts, conditions, and practices described in this Complaint;

   b. To modify their policies and practices to accommodate service dog users in conformity with federal and state law, and to advise Plaintiff that her service dog will not be excluded should she desire to enter and patronize the Laundromat;

   c. That the Court issue preliminary and permanent injunction directing Defendant as current owners, operators, lessors, and/or lessees and/or their agents of the subject property and premises to modify the above described property, premises, policies and related policies and practices to provide full and equal access to all persons, including persons with disabilities; and issue a preliminary and permanent injunction pursuant to ADA section 12188(a) and state law directing Defendant to provide facilities usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal

20

1    access, as required by law, and to maintain such accessible facilities

2    once they are provided and to train Defendant's employees and agents

3    in how to recognize disabled persons and accommodate their rights

4    and needs;

5    d.   An order retaining jurisdiction of this case until Defendant have fully

6    complied with the orders of this Court, and there is a reasonable

7    assurance that Defendant will continue to comply in the future absent

8    continuing jurisdiction;

9    2.    An award to Plaintiff of statutory, actual, general, treble, and punitive

10   damages in amounts within the jurisdiction of the Court, all according to proof;

11   3.    An award of civil penalty as against Defendant under California Penal

12   Code § 365.5(c);

13   4.    An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a,

14   California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5,

15   and as otherwise permitted by law, of the costs of this suit and reasonable attorneys'

16   fees and litigation expenses;

17   5.    An award of prejudgment interest pursuant to Civil Code § 3291;

18   6.    Interest on monetary awards as permitted by law; and

19   7.    Grant such other and further relief as this Court may deem just and

20   proper.

21   Date: May 15, 2025                              CLEFTON DISABILITY LAW

22

23        _/s/ Aaron M. Clefton_
     By AARON M. CLEFTON, Esq.

24   Attorneys for Plaintiff
     ROBERTA MARTINEZ

25

26   //

27   //

28   //

21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

Date: May 15, 2025                    CLEFTON DISABILITY LAW

                                            _/s/ Aaron M. Clefton_
                                      By AARON M. CLEFTON, Esq.
                                      Attorneys for Plaintiff
                                      ROBERTA MARTINEZ

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES