JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ROBERTA MARTINEZ

    Plaintiff,

    v.

DUC THAI dba ABC LAUNDROMAT 4

    Defendants.

Case No. 8:25-cv-1036-DOC-KES

**JUDGMENT**

Pursuant to the stipulation of the Parties, and admission of liability by Defendant as to all allegations made in the Complaint, and for good cause shown, JUDGMENT IS ORDERED AND ADJUDGED IN FAVOR OF PLAINTIFF on all her claims, as follows:

1) Judgment is entered in favor of Plaintiff ROBERTA MARTINEZ in the amount of $4,000 for her damages claim under the California Unruh Civil Rights Act. The interest rate per year shall be the standard 10% pursuant to California law.

2) Judgement is entered in favor of Plaintiff ROBERTA MARTINEZ for her attorney fees, litigation expenses, and costs under the Americans with Disabilities Act and the Unruh Civil Rights Act claims in an amount calculated as follows:

-1-

| Biller | Hours | Rate | Total |
|---|---|---|---|
| Aaron Clefton, Esq. | 83.3 | $650/hr | $54,145 |
| Emily O'Donohoe, J.D. | 85.0 | $295/hr | $25,075 |
| | | | |
| Out of Pocket Costs | | | $7,968.98 |
| | | | |
| Total Fees and Costs | | | $87,188.98 |

This amount is due to be paid February 27, 2026.  If this amount is not paid on or before February 27, 2026, the interest rate per year shall be the standard 10% pursuant to California law.

3) Together the total Judgment shall be $91,188.98 for all Plaintiff's monetary claims for damages, attorney fees, litigation expenses, and costs. If this amount is not paid on or before February 27, 2026, the interest rate per year shall be the standard 10% pursuant to California law.

4) Defendants shall adopt the following service dog policy and train their current and future employees regarding its contents:

**I.**     **PURPOSE:**

A. To comply with requirements of the Americans with Disabilities Act (ADA), the Disabled Persons Act, the U.S. Department of Justice's revised final regulations implementing the ADA, the Unruh Civil Rights Act, and other laws and regulations related to persons with disabilities.

B. To ensure that **service animals** accompany visitors/patrons with disabilities in all areas of the ABC Laundromat 4 where public access is normally allowed.

C. To provide guidelines for staff of the ABC Laundromat 4 in Anaheim, California to identify service animals when they encounter a **dog** in the course of their employment.

## II. POLICY:

A. It is the policy of the ABC Laundromat 4 that persons with disabilities will not be discriminated against and that they will have full and equal access, services and treatment.

B. All patrons accompanied by a dog that is individually trained to do work or perform tasks for a disabled person must be permitted to enter all areas of the ABC Laundromat 4 open to the general public.

C. The ABC Laundromat 4's staff shall use ***minimal inquiry*** when the work, service or tasks performed by the dog are not obvious and apparent.

## III. DEFINITIONS:

A. **Individual with a Disability** — A person who:

1. Has a physical or mental impairment that substantially limits one or more major life activities;

2. Has a record of such an impairment; or

3. Is perceived by others as having such an impairment

B. **Service Animal** — Only dogs that are individually ***trained to do work or perform tasks*** for people with disabilities qualify as service animals. Service animals ***recognize and respond*** to needs.

1. Examples include, but are not limited to:

a. Guiding vision impaired
b. Alerting hearing impaired
c. Pulling wheelchair
d. Retrieving items
e. Stability and ambulation
f. Alerting or protecting person having seizure
g. Reminding person to take medication
h. Calming person with Post-Traumatic Stress Disorder during an anxiety attack
i. Preventing or interrupting impulsive or destructive behavior
j. Removing disoriented individuals from dangerous situations

-3-

C.  **Comfort / Emotional Support Dogs**

1.  **Federal Law (ADA) -** Dogs that solely provide companionship, comfort, and emotional support are *not service animals under the ADA.*

a. Companionship, comfort and emotional support do not constitute work or tasks

2.  **California law** — Under the Unruh Civil Rights Act, the Department of Fair Employment and Housing *may* investigate denials of accommodation for access to public entities regarding comfort/emotional support dogs.

a. Denying accommodation of a **comfort/emotional support** dog in a public entity ***may*** result in a complaint to the Department of Fair Housing and Employment for violation of the Unruh Civil Rights Act.

D.  **Direct Threat -** A significant risk of substantial harm to the health or safety of others that cannot be eliminated or mitigated by a reasonable modification of practices or procedures or the provision of auxiliary aids or services.

1.  ABC Laundromat 4 staff must complete an **individualized assessment** when determining whether the service animal poses a direct threat based upon:

a.  Reasonable judgment that relies on current medical knowledge or on the best available objective evidence;
b.  The nature, duration, and severity of the risk;
c.  Probability that the potential injury will actually occur; and
d.  Whether reasonable modifications of policies, practices or procedures or provisions of auxiliary aids or services will mitigate the risk.

E.  **Fundamental Alteration** — A change that is so significant that it alters the nature of the facility or service offered.

IV.  **PROCEDURE:**

A.   **Permitting Service Animals** - Service animals shall be permitted in all areas of the ABC Laundromat 4 that are open to the public, provided the service animal does not:

1.   Pose a direct threat; or

2.   Fundamentally alter the ABC Laundromat 4's operations, policies, practices or procedures.

B.   **No Pet or Service Dog Fees** – Patrons who are accompanied by a service dog shall not be charged a fee for the use or presence of a service dog. However, patrons whose service dogs cause damage may still be charged for any damage caused to the premises.

C.   **Excluding / Removing Service Animals -** Any decision to exclude service animals in California shall be made only after an ***individualized assessment*** that the animal poses a direct threat to the health or safety of others which cannot be mitigated by modifications of policies or procedures or the provision of auxiliary aids or services.

1.   The individualized assessment of direct threat shall be conducted by the manager or the most senior employee on duty at the time at the ABC Laundromat 4.

2.   The individualized assessment of direct threat must be based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence to ascertain:

a.   The nature, duration, and severity of the risk;

b.   The probability that the potential injury will actually occur; and

c.   Whether reasonable modifications of policies, practices or procedures or provisions of auxiliary aids or services will mitigate the risk

D.   **Staff Inquiry -** When it is not obvious or apparent what service, task or work the dog performs, staff may ask two questions ***only:***

1.  Is the dog a service animal required because of a disability? and

2.  What work or task has the dog been trained to perform?

     a.  Under the ADA, staff must rely upon the patron's word that the dog is a service animal and the description of the service, task or work it performs.

     b.  Staff must utilize the chain of command if there is concern that the service animal poses a direct threat or would fundamentally alter the ABC Laundromat 4 and services provided;

E.   **Staff must not**:

1.  Ask about the nature or extent of the person's disability;

2.  Require documentation to support service animal status (e.g., ID card, proof of certification and training, special clothing or vest, special tag);

3.  Require a fee for the presence of a service dog;

4.  Ask dog to demonstrate ability to perform service, task or work;

5.  Refuse access based upon allergies and fear of dogs;

6.  Treat patrons with service animals less favorably (e.g. relegating them to certain areas of the restaurant, such as the patio or charging them more to purchase items from a store);

7.  Pet the service animal (may distract from assigned tasks);

8. Feed, clean, toilet or care for the service animal;

9. Ask patron to remove service animal from premises, **_unless_** an individualized assessment of direct threat has been completed *(See* Sections B, C, G).

F. **Requirements for Service Animals** — Service animals must be under the handler's control at all times via at least one of the following:

1. Harness

2. Leash

3. Tether

4. Voice control

5. Motion / signal control

6. Other effective controls

7. **Exception** — The devices listed above need not be used if they:

   a. Interfere with the service animal's work; or
   b. Person's disability prevents using these devices

G. **Legitimate Reasons for Removing the Service Animal**

1. The dog poses a direct threat to the health or safety of patrons and/or staff that cannot be eliminated by a reasonable modification the ABC Laundromat 4's policies, practices, or procedures or the provision of auxiliary services;

2. The dog fundamentally alters the nature of the goods, services, facilities, privileges, advantages, or accommodations the ABC Laundromat 4 provides to the public;

3. The dog is out of control and handler does not take effective action to control it;

4. Disruption (barking, running, jumping);

5. Aggressive behavior (biting, lunging);

6. The dog is not housebroken

7. The dog has poor hygiene

8. The dog is ill.

**IT IS SO ORDERED.**

Dated: January 29, 2026

_____
Honorable David O. Carter
U.S. District Court Judge